Filed 4/1/15  P. v. Temple CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br> v.<br><br>CHRISTOPHER JOHNNY TEMPLE,<br><br>   Defendant and Appellant. | C076517<br><br>(Super. Ct. Nos. 62106176,<br>   62098759) |

Defendant Christopher Johnny Temple pleaded no contest to solicitation of murder (Pen. Code, § 653f, subd. (b))[1] pursuant to *People v. West* (1970) 3 Cal.3d 595 and admitted a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) in exchange for a stipulated term of 12 years and dismissal of pending charges in another case.

---

[1] Further undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court erred in failing to award him 174 days of conduct credit accrued in the dismissed case. The People respond that defendant waived his right to the credit--and his appellate rights--pursuant to a stipulation entered after sentencing. We disagree and modify the judgment to award defendant the disputed 174 days.

## FACTUAL AND PROCEDURAL BACKGROUND

We dispense with a recitation of the facts surrounding defendant's crimes as they are not relevant to the issue raised on appeal.

On August 18, 2010, defendant was charged in case No. 62-098759 (the kidnapping case) with kidnapping during a carjacking (§ 209.5, subd. (a); count one) and carjacking (§ 215, subd. (a); count two). It was further alleged that defendant had sustained one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and three prior prison terms (§ 667.5, subd. (b)). On May 5, 2011, defendant was charged in case No. 62-106176 (the murder case) with solicitation of murder (§ 653f, subd. (b)), as well as the strike and three prior prison terms.

After defendant resolved his cases by plea agreement and then successfully moved to withdraw from his pleas, on March 7, 2014, he again entered a written plea agreement resolving both of his pending cases. He pleaded no contest to solicitation of murder and admitted the prior strike allegation in exchange for a stipulated term of 12 years in state prison and dismissal of the kidnapping case. At the end of the change of plea hearing, the trial court (Pineschi, J.) stated, "So I'll accept the plea as given and the admission, and I'll refer this gentleman to [the] Probation Department for a credits memo update. And that's the only reason we're going to have Probation become involved, to establish [an] update on his credits."

The probation department submitted a credit memo shortly thereafter. According to the credit memo, defendant had 1088 actual days served and 544 "case law credit," for a total of 1,632 days in the murder case. The credit memo also indicated that defendant

2

had 350 actual days served and 174 "case law credits," for a total of 524 days in the kidnapping case. (We assume, as do the parties, that "case law credit" is the term that particular probation officer chose to use for conduct credits.)

Defendant appeared for sentencing on April 11, 2014. After pronouncing defendant's sentence, the trial court (Curry, J.) asked: "Do we know his credits to date? It's my understanding, just so it's clear, *pursuant to plea agreement he was to receive credits all the way back including a prior case that's being dismissed*." (Italics added.) The parties *agreed* that all of defendant's credits, in both cases, were to be applied to the murder case. However, there was confusion as to the rate of accrual of conduct credits. In continuing the case for calculation of credits, the trial court told defense counsel: "Whatever the People and you agree on, I would stipulate to that amount."

The parties appeared before the trial court on April 24, 2014, and the following discussion occurred:

"[THE COURT]: The record should reflect back on April 11th the defendant was sentenced by this Court to [prison] for the sentence of 12 years, but we put the matter over until today to iron out the credits. I believe after speaking to counsel back in chambers, we reached a stipulation between [defendant] and the prosecution. Correct me if I'm wrong, [defense counsel]. I think it was concluded that he would have --

"[DEFENSE COUNSEL]: Additional 350 days on [the kidnapping] case [.]

"[THE COURT]: Right. We're going to calculate the credits for the abstract as of today's date, April 24th. His actual number of days is going to be 1,438 plus conduct credit of 544 for total of 1,982 days.

"[DEFENSE COUNSEL]: That's correct.

"[PROSECUTOR]: That is what the People would stipulate to. I believe the defense would stipulate to that as well. That is also with an agreement that the People will not file any criminal charges relating to an assault or battery that occurred while in custody on a date that is reflected in [defendant's] paperwork that was shown to me.

3

"[DEFENSE COUNSEL]: That's April 15th, 2014 at approximately 1524 hours at the jail.

"[THE COURT]: This is a stipulated agreement to the credits, so there won't be any argument or appeal on the issue. Correct, Counsel?

"[DEFENSE COUNSEL]: Correct."

There is no written record of the parties' stipulation in the record before us, other than a minute order prepared after the hearing.

Following a brief discussion, the prosecutor asked, "Do we need a personal acceptance of those credits from defendant?" The trial court responded, "It was stipulated by all parties as far as [the] plea agreement. The Court feels that is [a] sufficient waiver of any appellate rights." Neither party disagreed.

The abstract of judgment reflects that defendant received a total of 1,982 days of custody credit, consisting of 1,438 actual days and 544 days of conduct credit.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court erred in failing to award him 174 days of conduct credit accrued in the kidnapping case. The People respond first that defendant waived his right to appeal the credit determination pursuant to the parties' stipulation. Second, the People contend that defendant waived conduct credit in the kidnapping case pursuant to the same stipulation. We find no valid waivers.

I

*Waiver of Appellate Rights*

In *People v. Panizzon* (1996) 13 Cal.4th 68 (*Panizzon*), our Supreme Court held that a criminal defendant could expressly waive the right to appeal, so long as the waiver was knowing, intelligent, and voluntary. (*Id.* at p. 80.) In upholding the defendant's waiver in *Panizzon*, the court found it significant that the written change of plea form included express advisements of the defendant's appellate rights, and express waiver of

4

those rights by the defendant. (*Id.* at pp. 80-82.) In the present case, by contrast, defendant's appellate rights were only mentioned briefly at the continued hearing on defendant's custody credits.

During the hearing, the trial court asked counsel to confirm "there won't be any argument or appeal on the issue" of custody credits. Although defense counsel answered in the affirmative, the record is otherwise silent with respect to defendant's purported waiver. As the People necessarily concede, there is nothing in the record to suggest that defendant expressly waived his right to appeal, either orally or in writing. Furthermore, there is nothing in the record to support the conclusion that any purported waiver was knowing, intelligent, or voluntary. As such, the present case is closer to *People v. Rosso* (1994) 30 Cal.App.4th 1001, a case *Panizzon* distinguished, than it is to *Panizzon*.

In distinguishing *Rosso*, the *Panizzon* court wrote: "In that case, the reviewing court rejected the People's claim that the defendant had orally waived his appellate rights as follows: ' "[The Court]: [H]ave you discussed these [constitutional] rights with your attorney? [¶] [Rosso]: Yes. [¶] [The Court]: Do you understand each and every one of these rights? [¶] [Rosso]: Yes, I understand. [¶] [The Court]: Do you waive and give up these rights *and your right to appeal?* [¶] [Rosso]: Yes, I waive them." ' [Citation.] As noted in the decision, however, this was the only mention of appellate rights. The record in that case, unlike that here, apparently contained no evidence of a written waiver of appellate rights read and signed by the defendant after discussion with his attorney and no evidence that an attorney had explained the right to appeal to the defendant. Consequently, *People v. Rosso, supra,* stands in sharp contrast to the instant situation and does not call for a different result." (*Panizzon, supra,* 13 Cal.4th at pp. 84-85.)

In *Rosso*, as here, there was no written waiver of appellate rights read and signed by defendant after discussion with counsel, or evidence that counsel or the court explained the right to appeal to defendant. Therefore, in accordance with *Rosso*, we

conclude on this record that defendant did not waive his right to appeal custody credit issues.

## II

### *Waiver of Conduct Credits*

Criminal defendants are entitled to credits for actual time spent in custody prior to sentencing or as a condition of probation (§ 2900.5), and to additional credits for conduct and work performed during presentence custody (§ 4019). "It shall be the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section." (§ 2900.5, subd. (d); see *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1469, fn. 9.)

A defendant may waive entitlement to credits for past and future days in custody against an ultimate prison sentence, provided the waiver is voluntary, knowing and intelligent. (*People v. Johnson* (2002) 28 Cal.4th 1050, 1054-1055.) "To determine whether a waiver is knowing and intelligent, the inquiry should begin and end with deciding whether the defendant understood he was giving up custody credits to which he was otherwise entitled." (*People v. Burks* (1998) 66 Cal.App.4th 232, 236, fn. 3.) " '[A] custody credit waiver may be found to have been voluntary and intelligent from the totality of the circumstances, even if the sentencing court failed to follow the 'better course' of specifically advising the defendant regarding the scope of his waiver.' " (*People v. Arnold* (2004) 33 Cal.4th 294, 306, quoting *Burks*, *supra*, 66 Cal.App.4th at p. 235.)

Here, defendant pleaded no contest to solicitation of murder with the understanding that he would receive presentence custody credits accrued in the kidnapping case as well. When questions were raised about the credit *calculation*, the trial court continued the hearing and invited the parties to "work it out . . . ."

6

At the continued hearing, the parties engaged in off-the-record negotiations resulting in a stipulation whereby defendant would receive custody credit for 350 actual days in the kidnapping case, but no conduct credits. While the plea agreement contemplated that defendant would receive *all* of his accrued credits in both cases, the stipulation departed from the agreement, stripping 174 days of conduct credit from defendant's benefits under the plea bargain.

Although the People contend defendant waived his right to conduct credits in exchange for an agreement that no additional charges would be filed against him, *why* he waived is not the issue; the issue is *whether* he waived a previously agreed-upon condition of his plea, *post-plea*, in a manner sufficient to withstand review for validity of that purported waiver. Defense counsel's assertion that "there won't be any argument or appeal on the issue" does not amount to a knowing and intelligent waiver on the part of defendant. Nor does defendant's failure to object (on his own) to the trial court's summary of the stipulation constitute a knowing and intelligent waiver of his right to the custody credits under the original plea agreement, as the People seem to suggest.

On this record, we find that defendant did not knowingly and intelligently waive his right, to which all parties had previously agreed, to have *all* of the presentence credit from the dismissed case applied to his sentence in the instant case.

## DISPOSITION

The judgment is modified to add 174 days of conduct credit.  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.


        DUARTE       , J.


We concur:


      BLEASE      , Acting P. J.


      BUTZ       , J.

8