Filed 5/18/16  P. v. Fierro CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARTIN FIERRO,<br><br>    Defendant and Appellant. | F068387<br><br>(Super. Ct. No. VCF272573)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Joseph A. Kalashian, Judge.

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Martin Fierro fired a single shot from a .22-caliber revolver while he was driving his vehicle in Visalia, California. He struck a bicycle rider. A jury convicted him of assault with a firearm (Pen. Code, § 245, subd. (a)(2)[1]; count 2) and found true three special allegations: (1) that he committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(4)); (2) that he personally and intentionally discharged a firearm from a motor vehicle with the intent to inflict great bodily injury and did inflict great bodily injury (§ 12022.55); and (3) that he personally caused great bodily injury (§ 12022.7). The jurors were hung regarding the other count of premeditated attempted murder. A mistrial was declared regarding count 1. The prosecutor offered to dismiss count 1 in exchange for a waiver of appellate rights, and appellant agreed.

As an initial matter, we determine appellant did not give a knowing and intelligent waiver of his appeal rights. Because the People did not receive the benefit of the bargain, we also determine that the prosecution may reinstate the charges on count 1.

Regarding appellant's two primary issues on appeal, we find his first contention meritorious. The jury found true that appellant fired a gun from a motor vehicle with the specific intent to inflict great bodily injury (§ 12022.55). The parties agree, as do we, that instructional error occurred for this enhancement. We find this error prejudicial, requiring resentencing of count 2. However, we reject appellant's other claim that the Fifth and Sixth Amendments to the United States Constitution were violated when the prosecution's gang expert opined that appellant was a gang member. We vacate the sentence on count 2 and remand for further proceedings.

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

## BACKGROUND

**I.      Trial Facts.**

      **A.      Prosecution's evidence.**

            **1.      The shooting.**

On August 31, 2012, Gilbert Aldana was shot once in his chest under his right nipple as he rode his bicycle in Visalia. Aldana did not see his shooter. An eyewitness informed police that the shooter was driving a faded blue Jeep Cherokee and had fired a revolver out the window. Based on nearby surveillance video, police confirmed the description of the suspect's vehicle and a single gunshot was heard on the recording.

Dirk Alfano, a Visalia police officer, observed a vehicle driving in Visalia that matched the suspect's Cherokee. Alfano stopped the vehicle and appellant was the sole occupant. Appellant was taken into police custody when a .22-caliber revolver was observed in the vehicle. The revolver held a total of eight cartridges, five of which were unfired and three which had been fired. No gang indicia was observed in appellant's vehicle. Gunshot residue was later found on both the inside and outside of the driver's side door of the vehicle. Police showed the revolver to the eyewitness, who was "pretty confident" it was the one involved in Aldana's shooting.

When he was shot, Aldana was wearing blue shoes. He was hospitalized for five days and underwent surgery. At trial, he testified he did not know appellant, he could not recall ever meeting appellant, and he had no problems with appellant. Aldana knew of no reason why appellant would shoot him. No evidence was introduced at trial establishing Aldana as a gang member.

            **2.      Appellant's interview with law enforcement.**

A detective interviewed appellant after his arrest, which was recorded and played for the jury. Appellant was advised of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). The detective asked questions regarding appellant's actions before

the shooting, and advised him that he was a suspect in an attempted homicide. The following exchange then occurred regarding appellant's gang association:

> "[DETECTIVE]: Okay. And—and you're obviously—if you're not a—if you're not down as a Southerner you—you obviously associate with [Sureños].
>
> "[APPELLANT]: I ain't no [Sureño].
>
> "[DETECTIVE]: Hmm?
>
> "[APPELLANT]: I don't associate with [Sureños].
>
> "[DETECTIVE]: Okay. Well, you're not a [Norteño] either. Are you?
>
> "[APPELLANT]: That's who I associate with.
>
> "[DETECTIVE]: You associate with Northerners?
>
> "[APPELLANT]: Yes."

Appellant said he did not know Aldana and he did not know why he shot him. Appellant alluded to "shootings" that had occurred earlier at his house, and the detective asked if appellant thought Aldana was involved. Appellant said, "Dunno [*sic*]. Maybe. I don't know." Appellant stated he only fired once while Aldana was riding a bicycle on appellant's left side, and he did not know what was going through his mind when he shot. Appellant denied that Aldana had any weapons or "came at" him with anything. He said he did not see his shot hit Aldana, and denied saying anything before pulling the trigger.

The detective noted that appellant's revolver had three spent shell casings. Appellant denied firing the other two rounds that day, claiming he did not know when they were fired. When pressed why he shot Aldana, appellant stated, "I just thought he could've been somebody. I don't know." The detective again asked if appellant shot Aldana because Aldana was the person who "firebombed" and shot at appellant's house. Appellant said, "I don't know. Maybe."

4.

### 3. The gang evidence.

In addition to being a percipient witness, the arresting officer, Alfano, testified as the prosecution's gang expert. At the time of his testimony, he had been part of the gang suppression unit for almost five years and a police officer for over 12 years. Alfano was familiar with field identification (FI) cards, which are used by officers to record information regarding a suspected gang member, including biological data, dress styles, tattoos, vehicle types, and any associates. FI cards are used in criminal investigations, consensual encounters, and traffic stops.

To establish the gang's primary activities, Alfano reviewed two previous cases involving the conviction of two different Norteño gang members. Alfano said he was familiar with appellant based on his review of documents, reports, FI cards, and speaking with other officers. Alfano stated that appellant had prior gang-related contacts with law enforcement. He went through the extensive list of evidence which he felt established appellant as a gang member.

In July 1997, a Visalia police officer reported a crime involving appellant in association with two other individuals, one of whom was a "documented" Norteño gang member. Appellant was a juvenile.

In November 1998, a crime report was generated by a Visalia police officer in which appellant was associating with two other individuals, one of whom was a documented Norteño gang member. Appellant was a juvenile.

In March 1999, appellant was contacted by police with two other individuals during the investigation of a crime. The two associates were both documented Norteño gang members.

In January 2002, a report was created regarding appellant and another individual trespassing in a vacant residence. The other individual was a documented Norteño gang member.

5.

In October 2006, a field interview was conducted by a Visalia police officer following reports that gang members "were congregating." According to the field interview report, appellant admitted to being "a Northern gang member." Alfano said it was "very important" for officers to note gang admissions on FI cards.

In June 2009, an officer made contact with appellant and another documented Norteño gang member "during a gang saturation detail." Appellant listed himself as "a Northerner" when he was booked into county jail.

In November 2009, an officer made contact with appellant and another documented Norteño gang member.

In August 2012, appellant and his family were victims of a shooting directed at their residence. Alfano believed the shooting could show appellant's gang affiliation. Alfano explained it is not common for someone without gang ties to be a victim of shots fired at their house.

Alfano reviewed five "classification questionnaires" prepared when appellant was booked into county jail in June 2009, November 2009, June 2010, June 2012, and September 2012. Alfano explained that part of each form is filled out by the intake deputy and a portion is completed by the person being booked into jail. In each of these five bookings, the intake deputy listed appellant as either a "northern associate" or a "Northerner." In four of these bookings, appellant himself wrote that he associates with "Northerners" but he did not identify any known enemies on three of the forms. On a form in 2012, appellant circled the word "gang member" and wrote the word "North" on it.

Alfano noted a difference exists "between associating and, actually, being a gang member." He opined that appellant was a Norteño gang member based on appellant's past admission of being a gang member to a police officer, the classification questionnaires when appellant was booked into jail, his association "on numerous occasions" with other Norteño gang members, and his involvement in gang-related crime.

6.

Based on a hypothetical that matched the facts of the case, Alfano opined that the commission of this crime benefitted a criminal street gang. He believed this shooting could exercise control over the gang's territory, which would cause fear. In addition, this crime would gain praise for appellant with his fellow gang members.

The prosecutor asked Alfano if a "Northerner" would be allowed under the gang's hierarchy to shoot at someone who was wearing blue shoes. Alfano said it depended on the circumstances but noted where this shooting took place it would be "very uncommon" for a Norteño gang member not to do anything if a person was wearing blue shoes in the gang's territory. Alfano also opined that even if the victim was not a rival gang member, the shooting would benefit the gang by causing even more fear in the community.

On cross-examination, Alfano admitted he was not aware of appellant being "jumped into" any gang, he was not aware that any of appellant's family members were gang members, and he was not aware that appellant had ever been charged for committing a crime for the benefit of a criminal street gang. Alfano was not aware of any reliable source naming appellant as a gang member, he did not know if appellant had any tattoos, he was not aware of appellant ever being identified as having gang clothing, and he was not aware of appellant being in, or possessing, any gang photographs. Appellant's cell phone did not have any gang monikers in the contacts, and it contained no photographs that were gang related. Alfano was not aware of any gang writings found associated with appellant, including letters to or from gang members, and appellant had no known gang moniker attached to him. Appellant was not in possession of any known "tagging tools" or materials for graffiti. Alfano had no evidence that appellant belonged to a particular clique or subset of the Norteño gang. Alfano had never encountered someone in the streets who told him that appellant was a gang member. Appellant was not known to possess anything that could be considered "gang music."

Alfano was presented with a photograph attached to the 2006 field identification report which Alfano had reviewed earlier in his testimony. The photograph showed appellant wearing a white shirt with blue lettering across the chest while standing next to a known Norteño gang member. Despite the photograph showing appellant wearing a shirt with blue lettering, Alfano believed it was possible appellant shot Aldana because he was wearing blue shoes.

### B.     Defense's evidence.

Three of appellant's relatives testified on his behalf. Appellant was not known to wear gang clothing, he did not possess or wear red bandanas, he did not listen to gang music, he did not have gang artwork, and he did not have gang photographs. Appellant did not have a reputation as a gang member.

Appellant's nephew explained that appellant shared a room with him. Someone had shot at their home and threw "little firebombs" at appellant's vehicle prior to Aldana's shooting. Appellant's nephew informed police that he thought a Norteño gang member was responsible after a misunderstanding occurred at school in which Norteño gang members mistakenly believed the nephew was a Sureño.

Michael Hurtado, a former gang member, testified as a gang expert for the defense. He reviewed all of the discovery in the case and opined that appellant was not a gang member. Hurtado discounted the 2006 FI card as "sketchy" in which appellant admitted being a gang member because there was "no direct quote of what was said." Hurtado also found it contradictory that appellant was photographed wearing a shirt with blue lettering.

Hurtado testified a difference exists between people who call themselves Norteños versus people who call themselves Northerners. Many people living in an area with gang members will consider themselves "Northerners" without committing to the gang because they grew up and went to school with the gang members. In contrast, a person who is a Norteño is committed to the gang. A Northern associate will not have tattoos. Many

8.

gang members will have a gang moniker and will possess gang music. It is common for a gang member to possess gang-related photographs.

Hurtado believed the shots fired at appellant's house, done by a suspected Norteño, showed that appellant was not a Norteño because that would be a "major violation." Hurtado also noted, "If you do something wrong, [the shooting] would be a severe punishment by their own people."

Hurtado believed "association" with gang members could be a proper factor for determining whether an individual is a gang member, but situations exist where a person associates with gang members without being a gang member. Hurtado opined that appellant was not a gang member but "just an associate." Hurtado did not believe that appellant had "committed" to the gang but lived in an area surrounded by gang members.

Hurtado believed this shooting was not done to benefit a gang. Appellant was not a gang member, gang members do not target civilians, and no gang slurs or "colors" were involved.

## II. Mistrial And Sentencing.

The jury found appellant guilty of assault with a firearm (count 2) and found true three special allegations: (1) that he committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(4)); (2) that he personally and intentionally discharged a firearm from a motor vehicle with the intent to inflict great bodily injury and did inflict great bodily injury (§ 12022.55); and (3) that he personally caused great bodily injury (§ 12022.7). The jury could not reach a verdict regarding attempted murder (count 1), and a mistrial was declared.

The following day, August 28, 2013, appellant appeared in court for the purpose of considering the prosecution's offer to dismiss count 1. The following exchange occurred:

9.

"[THE PROSECUTOR]: …. The people are prepared to dismiss Count 1 and continue to the sentencing on the verdict as found by the jury in exchange for a waiver of appellate rights.

"THE DEFENDANT: That's fine.

"THE COURT: Sir, you're waiving your appellate rights, then?

"THE DEFENDANT: Yes.

"THE COURT: That's been explained to you by your attorney?

"THE DEFENDANT: Yes.

"THE COURT: Okay. Then Count 1 is being dismissed?

"[THE PROSECUTOR]: Yes, your Honor."

On October 7, 2013, the parties met to discuss sentencing, and appellant asked the court to replace his attorney. Upon denying his request, the court advised appellant that he could file an appeal after sentencing, and a different attorney would be appointed to represent him.

On October 10, 2013, the parties met for sentencing. The court imposed a term of 15 years to life for count 2. Various fees and fines were imposed. At the conclusion of the sentencing hearing, the court informed appellant that he had 60 days to file a notice of appeal if he wished to appeal the judgment and the sentence. The court informed appellant that the Court of Appeal would appoint an attorney to represent him. The prosecution did not object to these statements.

## DISCUSSION

### I. A Knowing And Intelligent Waiver Of Appellate Rights Is Not Present.

Appellant contends his waiver was unenforceable because he did not give a voluntary, knowing and intelligent waiver of his right to appeal.

10.

### A.    Standard of review.

"To be enforceable, a defendant's waiver of the right to appeal must be knowing, intelligent, and voluntary.  [Citations.]"  (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.)  An appellate court reviews de novo whether a waiver was valid.  (*Ibid.*)

### B.    Analysis.

A "waiver" is an abandonment of a known right or privilege, or its intentional relinquishment.  (*People v. Rosso* (1994) 30 Cal.App.4th 1001, 1006 (*Rosso*).)  To determine whether an intelligent waiver occurred, the particular facts and circumstances of each case must be examined, including the defendant's background, experience, and conduct.  (*Ibid.*)  The party claiming the existence of the waiver bears the burden to prove it with evidence that does not rely on speculation.  Cases should be resolved against the finding of a waiver when there is doubt.  (*Ibid.*)

Appellant raises numerous arguments to establish why he may maintain the present appeal.  We find compelling that this record does not demonstrate a knowing and intelligent waiver of his appellate rights.

*Rosso, supra,* 30 Cal.App.4th 1001, is instructive.  The defendant pleaded guilty in a negotiated plea agreement.  Before his plea, the trial court advised him of his constitutional rights, but there was no mention of appellate rights.  (*Id.* at pp. 1005-1006.)  The trial court asked the defendant if he had discussed his rights with his attorney, which the defendant answered in the affirmative.  The trial court asked if the defendant waived and gave up his constitutional rights, and his right to appeal.  The defendant said he waived them.  No further discussion occurred regarding the defendant's appellate rights.  (*Id.* at p. 1006.)  The Court of Appeal refused to find a waiver of appellate rights where there was neither a written advisement and waiver of rights, nor an oral advisement preceding the oral waiver.  (*Id.* at p. 1007.)

Here, as in *Rosso*, this record does not establish any advisement of appeal rights.  The trial court offered no advisement regarding the rights appellant was giving up and

11.

this record does not contain a written waiver form. We have no way of knowing what, if anything, was said to appellant by his counsel. While a purported waiver occurred, we cannot say that the waiver was knowing and intelligent based on this record.

Respondent contends appellant's waiver was valid because he was "not new to the criminal justice system" given his juvenile record and a prior conviction of felony possession of a controlled substance. Respondent relies on *People v. Vargas* (1993) 13 Cal.App.4th 1653 (*Vargas*) to establish the general waiver was knowing and intelligent. This reliance is misplaced.

In *Vargas,* the defendant expressly waived his right of appeal as part of a negotiated plea agreement. He signed a written change of plea form which contained a general waiver of appellate rights, and the court asked the defendant if he waived his rights to appeal. (*Vargas, supra,* 13 Cal.App.4th at p. 1657.) On appeal, the *Vargas* court noted that the defendant's actions during the proceedings supported a finding that he gave a knowing, intelligent and voluntary waiver. The defendant had represented himself at times during the prosecution of the case. He had submitted various motions, including for a continuance, discovery, to exclude evidence, and to dismiss, and he made numerous objections during the presentation of the prosecution's case. The defendant successfully negotiated the plea agreement with the prosecutor, which resulted in a very favorable outcome. (*Id.* at p. 1660.) *Vargas* noted that the court advised the defendant of the waiver of the right to appeal, and the defendant separately signed a change of plea form which indicated he was waiving his right to appeal. In addition, the defendant was able to consult with counsel who, although not officially representing him, looked over the plea agreement and was present when the prosecutor went over it. (*Id.* at p. 1661.) *Vargas* held that the defendant's waiver was knowing, intelligent and voluntary. (*Ibid.*)

Here, although appellant had some prior experience with the criminal justice system, some of that experience occurred when he was a juvenile. Unlike in *Vargas*, appellant did not represent himself in this criminal prosecution, he did not negotiate his

12.

own deal with the prosecutor, and he did not sign a written change of plea agreement. This record does not demonstrate the level of sophistication which the defendant in *Vargas* exhibited. *Vargas* is distinguishable.

Based on this record, we cannot say that appellant gave a knowing and intelligent waiver of his appellate rights. Accordingly, we will review appellant's claims regarding count 2.

### 1.     Count 1 may be reinstated at the prosecution's election.

Respondent contends if appellant is permitted to obtain appellate review of his claims regarding count 2, this matter must be remanded regarding count 1 to put the parties back in their original position. We agree.

Contract principles are applied regarding agreements between the prosecution and a criminal defendant. (See *People v. Paredes* (2008) 160 Cal.App.4th 496, 506-507 [plea agreement].) A promise that is part of the inducement or consideration must be fulfilled in order to have a valid agreement. (*Id.* at p. 507.) When the agreement cannot be fulfilled, the parties should be returned to their original positions. (*People v. Superior Court (Sanchez)* (2014) 223 Cal.App.4th 567, 577.)

Here, the parties' agreement regarding count 1 cannot be fulfilled because appellant's waiver of appellate rights was not valid. Accordingly, upon remand the prosecution may, if it so chooses, reinstate the charges in count 1. In that event, the trial court shall conduct further proceedings as may be appropriate.

## II.     The Jury's True Finding Regarding Section 12022.55 Must Be Vacated.

Appellant asserts that the trial court prejudicially erred by failing to instruct the jury regarding the specific intent required under section 12022.55. In the alternative, he claims his counsel rendered ineffective assistance if this issue is deemed forfeited on appeal. He submits that the judgment must be reversed as to the true finding and his case remanded for resentencing.

13.

### A. Background.

#### 1. The information.

On the first day of trial, the court read the information to the jury. Regarding count 2, the information alleged, in part, that appellant "with the intent to do so, inflicted great bodily injury and death on [Aldana], as a result of discharging a firearm from a motor vehicle in violation of … section 12022.55."

#### 2. Jury instructions.

The court instructed the jury with CALCRIM No. 252 regarding the union of act and intent. The jury was instructed that assault with a firearm, and the allegations "of inflicting great bodily injury and the use of a firearm" required a general intent. In contrast, the jury was instructed that attempted murder and the allegation of a criminal street gang required a specific intent or mental state. To find appellant guilty of attempted murder or the special allegation of a criminal street gang, the jury was told that appellant must not only have intentionally committed the prohibited act, but must have done so with a specific intent. Regarding attempted murder, this was later defined as a specific intent to kill the victim.

The trial court failed to instruct the jury regarding the elements necessary to find true the special allegation under section 12022.55.

#### 3. Closing arguments.

During closing arguments, the prosecutor informed the jury that appellant was guilty of attempted murder because he slowed down, aimed directly at Aldana, and shot him in the chest. The prosecutor noted that appellant never denied trying to hit Aldana during his interview with the detective, and never said he did not intend to hit him. The prosecutor contended it would be "a fantasy" if the defense suggested that appellant did not aim. The prosecutor asserted appellant intended to cause the damage he inflicted. The prosecutor contended appellant acted with deliberation and premeditation. It was argued that appellant was a gang member based on his own admissions, booking

14.

statements, and associations. The shooting was gang motivated because Aldana wore blue shoes, the gang would obtain more stature, and appellant would look good to his fellow gang members. The prosecution said count 2 did not apply in this case, and the jury was asked to focus on the attempted murder. Regarding the other enhancements, the prosecutor simply directed the jury to review them when they deliberated.

Appellant's defense counsel argued it was ridiculous to assume someone would identify Aldana as a Sureño gang member because he was wearing blue shoes while riding a bicycle. Defense counsel argued this was not a gang shooting because no gang slurs were yelled, no gang colors were involved, and appellant was alone in his vehicle. Appellant was not a gang member because he had no moniker, did not tag, he had never been charged with committing a crime for the benefit of a criminal street gang, he was not in gang photos, and he did not have a reputation as a gang member. It was argued that appellant shot Aldana because appellant was angry after someone shot and firebombed his house, and he must have believed Aldana was involved. It was argued there was no intent to kill because appellant only fired once but had more bullets loaded in his gun. With only a .22-caliber handgun, the defense asserted appellant would have fired more than one shot if he intended to kill. Appellant said in his interview with the detective that he did not know if he hit Aldana when he sped off. Defense counsel urged the jury to find appellant guilty of assault with a firearm but not attempted murder.

During final summations, the prosecutor said the jury should find appellant also guilty of count 2, but he was guilty of count 1, attempted murder.

### 4. The verdict form.

The verdict form for count 2 asked the jury, in part, whether appellant "personally and intentionally discharged a firearm, a Handgun, from a motor vehicle with the intent to inflict great bodily injury and did inflict great bodily injury, in Violation of Penal Code [section] 12022.55." The jury found this allegation true.

15.

### B. Standard of review.

A federal constitutional error is present when instructional error occurs regarding an enhancement that increases the sentence for the underlying crime beyond its statutory maximum. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 327.). However, it is a question of state law when instructional error occurs for an enhancement which does not increase a life term for the underlying offense but, rather, prescribes the minimum period the defendant must serve before becoming eligible for parole. (*Ibid.*)

### C. Analysis.

In count 2, appellant was convicted of assault with a firearm, which carries a sentence in state prison of two, three or four years. (§ 245, subd. (a)(2).) As is relevant here, section 12022.55 imposes a sentence enhancement "in the state prison for 5, 6, or 10 years" for "any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury … as a result of discharging a firearm from a motor vehicle" while committing a felony or attempted felony. Section 12022.55 requires a finding of specific intent because the defendant must intend to commit a further act or achieve an additional consequence beyond the proscribed act. (See *People v. Hood* (1969) 1 Cal.3d 444, 456-457 [defining "general" and "specific" intent].)

The parties agree, as do we, that the trial court failed to instruct the jury regarding the elements necessary to find true the enhancement allegation pursuant to section 12022.55. (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [trial court must instruct the jury on the relevant principles of law].) Moreover, the parties agree, as do we, that the trial court erroneously said a general intent was required for this allegation. Because instructional error occurred, we examine prejudice.

Respondent contends the state standard for prejudice should be applied here. Respondent argues the enhancement pursuant to section 12022.55 "merely fixed appellant's minimum punishment, and had no upward impact upon the life term he

16.

earned by committing his assault for the benefit of his street gang" pursuant to section 186.22, subdivision (b)(4)(B). We disagree.

A sentence enhancement under section 186.22, subdivision (b), does not impose an indeterminate sentence unless certain enumerated felonies are violated, which do not include assault with a firearm. (§ 186.22, subd. (b)(1)-(4).) An indeterminate sentence with a minimum of 15 years is imposed when section 12022.55 is violated and the jury determines that the defendant committed the underlying felony for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(4)(B).)

The true finding on section 12022.55, coupled with the true finding on section 186.22, subdivision (b)(4), increased appellant's sentence for the underlying crime beyond its statutory maximum. Without the true finding on section 12022.55, appellant would not have received an indeterminate sentence under section 186.22, subdivision (b)(4)(B). Accordingly, the instructional error regarding section 12022.55 must be analyzed under the federal standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 327.) Under this standard, the People have the burden to prove beyond a reasonable doubt that the error did not contribute to the jury's verdict. (*Id.* at p. 320.)

Appellant asserts that a properly instructed jury would have been unable to agree that he held the specific intent to inflict great bodily injury. Respondent argues that any instructional error was harmless, contending the evidence was overwhelming that appellant intended to inflict great bodily injury. We find appellant's contentions persuasive and reject respondent's arguments.

During closing arguments, neither the prosecutor nor defense counsel discussed the enhancement under section 12022.55, whether it applied to the case, or how the jury should view the facts relative to its elements. Appellant's counsel conceded that appellant was guilty of assault with a firearm, but he argued that appellant had no intent to kill. Defense counsel's admission of guilt regarding the assault charge was done in a

17.

clear effort to avoid a guilty verdict for attempted murder. However, without any instruction from the court regarding the enhancement for section 12022.55, and without any argument from counsel regarding its application or elements, it appears very possible the jury found appellant guilty of count 2, and found true the enhancement under section 12022.55, simply because defense counsel urged the jury to find appellant guilty of assault with a firearm.

We are mindful that Aldana was shot in his chest. However, we disagree with respondent that the evidence was overwhelming that appellant had the specific intent to inflict great bodily injury. Appellant used a small caliber handgun. He fired a single shot while he was driving. When discovered, appellant's handgun was loaded with five more bullets. During his postarrest interview, appellant was asked if he shot Aldana because appellant thought Aldana had firebombed his house. Appellant said, "Dunno [*sic*]. Maybe. I don't know." Appellant said he did not see his shot hit Aldana. The jury was instructed that conviction for attempted murder required a finding of specific intent to kill. It is noteworthy that the jurors were unable to reach a verdict regarding attempted murder based on these same facts.

Respondent asserts no prejudice occurred because the trial court read the information to the jury on the first day of trial and the verdict form provided the jury with the correct definition of law regarding the enhancement under section 12022.55. We are not convinced.

The information was read to the jury approximately eight calendar days before the verdict was rendered. Although the verdict form contained the appropriate language regarding the enhancement under section 12022.55, we do not think this was sufficient to overcome the deficiencies appearing in this record. The court failed to provide any instruction regarding the enhancement under section 12022.55. The court stated in error that only a general intent was necessary for the allegation under section 12022.55. Defense counsel admitted appellant's guilt regarding the base charge in count 2. There

was an absence of any comment from either counsel during closing arguments regarding this enhancement.

In light of the jury's inability to reach a verdict regarding attempted murder, we cannot say beyond a reasonable doubt that the instructional error did not contribute to the jury's true finding regarding the special allegation under section 12022.55. (*People v. Sengpadychith, supra,* 26 Cal.4th at p. 320.) Accordingly, the true finding regarding section 12022.55 is vacated. Appellant shall be resentenced for count 2.

## III. Prejudice Did Not Result From Admission Of The Jail Classification Intake Forms Or The Gang Expert's Use Of Hearsay Evidence.

Based on the Fifth and Sixth Amendments, appellant argues the judgment must be reversed regarding the gang enhancement allegation which the jury found true. He further contends his trial counsel rendered ineffective assistance if his constitutional claims are deemed forfeited on appeal.

### A. Standard of review.

We apply the abuse of discretion standard when reviewing the trial court's admission of expert testimony. (*People v. Valadez* (2013) 220 Cal.App.4th 16, 29.) We apply the de novo standard of review for claims implicating federal constitutional rights such as the Confrontation Clause. (*People v. Seijas* (2005) 36 Cal.4th 291, 304.)

### B. Analysis.

Appellant contends the admissions he made on jail classification intake forms were improperly introduced against him at trial in violation of *Miranda*. He also asserts the prosecution's gang expert relied upon other out-of-court statements to prove his gang affiliation, which was barred by the Sixth Amendment under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

#### 1. No prejudice resulted from the jail intake interviews.

In *People v. Elizalde* (2015) 61 Cal.4th 523, our Supreme Court held that correctional officers are permitted to ask routine booking questions regarding gang

19.

affiliations for institutional security purposes, but responses or admissions to such questions are not admissible against the defendant in the criminal trial in the absence of *Miranda* warnings. (*People v. Elizalde*, at pp. 540-541.)

Here, appellant provided information about his gang affiliation as part of various jail booking intake procedures. This record does not establish that he received *Miranda* warnings prior to those admissions. Thus, the unadmonished statements made during the classification interviews were inadmissible at his trial. (*People v. Elizalde, supra,* 61 Cal.4th at p. 540.) Consequently, we must analyze the prejudicial impact.

The federal standard of review for prejudice under *Chapman* is used when a defendant's statements are obtained in violation of the Fifth Amendment and admitted against him or her. (*People v. Elizalde, supra,* 61 Cal.4th at p. 542.) This standard requires the People "'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [Citation.]" (*Ibid.*)

Here, appellant's gang association was established through his own admission made to the detective following this crime. Appellant received *Miranda* warnings, was told he was a suspect in an attempted homicide, and was asked if he associates with Sureños. He immediately said, "I ain't no Sureño" and "I don't associate with Sureños." The interviewing detective said, "Okay. Well, you're not a [Norteño] either. Are you?" Appellant answered, "That's who I associate with." Appellant said, "Yes" when the detective confirmed he associates with Northerners.

A sentence enhancement imposed under section 186.22, subdivision (b), does not require a finding that the defendant is an active member of a criminal street gang. (*In re Ramon T.* (1997) 57 Cal.App.4th 201, 206-207.) Pursuant to CALCRIM No. 1401, the jury was instructed that the People need not prove that appellant is an active or current member of a criminal street gang in order to find true the special allegation under section 186.22, subdivision (b).

Based on appellant's admission that he associates with the Norteño gang, it is beyond a reasonable doubt that the erroneous introduction of jail classification intake forms was not prejudicial in this case.

### 2. Appellant forfeited his *Crawford* challenge and no prejudice exists even if this claim was not forfeited.

Appellant contends that Alfano's opinion that he was a "Norteño gang member or associate whose acts benefited the gang" was based entirely on hearsay. Appellant asserts that Alfano had no first-hand or direct evidence of his gang affiliation and Alfano relied exclusively upon documents, reports and a FI card to reach his opinion. Appellant argues that his Sixth Amendment right to confrontation was violated when the hearsay evidence from police sources was admitted.

As an initial matter, appellant concedes he failed to object in the trial court on Sixth Amendment confrontation grounds to exclude Alfano's testimony. Appellant's failure to so object forfeited this challenge on appeal. (*People v. Redd* (2010) 48 Cal.4th 691, 730 [failure to raise Sixth Amendment objection in the lower court forfeits that claim on appeal].) In any event, even assuming appellant preserved the issue for appeal, it is without merit due to a lack of prejudice.

The Sixth Amendment guarantees a criminal defendant the right to confront any witnesses against him or her. (*Crawford, supra,* 541 U.S. at p. 42; *People v. Dungo* (2012) 55 Cal.4th 608, 612 (*Dungo*).) The Confrontation Clause is violated when testimonial hearsay evidence is admitted from a declarant who is unavailable to testify unless the defendant had a prior opportunity for cross-examination. (*Crawford, supra,* 541 U.S. at pp. 59, 68.) *Crawford* did not provide a comprehensive definition of what qualifies as "testimonial" but it noted it applied "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (*Id.* at p. 68.) A criminal defendant's judgment

21.

must be reversed when a defendant's confrontation rights under the Sixth Amendment are violated unless the prosecution can show that the error was harmless beyond a reasonable doubt. (*People v. Rutterschmidt* (2012) 55 Cal.4th 650, 661.)

The California Supreme Court has established "two critical components" to determine if an out-of-court statement is testimonial: "First, to be testimonial the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution. The high court justices have not, however, agreed on what the statement's primary purpose must be." (*Dungo, supra,* 55 Cal.4th at p. 619.)

The California Supreme Court is currently deciding whether an expert's reliance on testimonial hearsay to form an opinion violates a defendant's Sixth Amendment right to confrontation. (See *People v. Sanchez* (2014) 223 Cal.App.4th 1, review granted May 14, 2014, S216681; *People v. Archuleta* (2014) 225 Cal.App.4th 527, review granted June 11, 2014, S218640.)

We need not analyze whether or not the various documents, the police reports and the FI card which Alfano reviewed were testimonial so as to implicate appellant's Sixth Amendment rights of confrontation. Even if we presume, without so deciding, that this hearsay information was testimonial, appellant's association with the Norteño gang was clearly established through his own admission to the interviewing detective.

Moreover, expert opinion testimony is proper regarding the culture and habits of criminal street gangs. (*People v. Gardeley* (1996) 14 Cal.4th 605, 617.) An expert may generally provide opinion testimony based on hypothetical questions wherein the expert assumes the truth of the facts. (*Id.* at p. 618.) "Such a hypothetical question must be rooted in facts shown by the evidence, however. [Citations.]" (*Ibid.*) An adequate foundation is laid for a police officer to testify as a gang expert if their opinions are based on personal discussions with and observations of gang members, information obtained from other officers, and a review of department files. (*People v. Olguin* (1994) 31

22.

Cal.App.4th 1355, 1370.)  A gang expert may opine regarding a defendant's possible "motivation for entering rival gang territory and his likely reaction to language or actions he perceived as gang challenges.  [Citations.]"  (*People v. Ward* (2005) 36 Cal.4th 186, 210.)

Here, Alfano testified regarding his years of general police training, his specialized training in the gang suppression unit, his personal experience and knowledge regarding criminal street gangs in the county, how the gangs are organized, how someone joins a gang, the gang rivalries, the importance of controlling gang territory, the use of gang violence to control territory, and the specific rivalry between the Norteño and Sureño gangs.  He had spoken with members of the Norteño gang, he had investigated over 60 cases in which a Norteño gang member had been involved, and he was familiar with the areas in Visalia which the Norteño gang claimed.  Alfano opined that this shooting was done to benefit a criminal street gang through the use of violence to control a certain area of town and instill fear in others.

Based on appellant's own admission that he was an associate of the Norteño gang, it is beyond a reasonable doubt that exclusion of the various police documents, records and the FI card would not have affected the outcome of the trial.  Accordingly, the jury's true finding will not be vacated that appellant committed the assault with a firearm for the benefit of, at the direction of, or in association with a criminal street gang in violation of section 186.22, subdivision (b)(4).[2]

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court.  Regarding count 1, the prosecution may, if it so chooses, reinstate the charges and the trial court shall conduct further proceedings as may be appropriate.  Regarding count 2, the jury's

---

**2**    Because prejudice did not occur, we will not analyze appellant's contention that his trial counsel rendered ineffective assistance in not raising a Sixth Amendment challenge in the trial court.

true finding is vacated regarding Penal Code section 12022.55.  Appellant shall be resentenced accordingly.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

DETJEN, J.


_____

FRANSON, J.